IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERI E. ROBLEZ,

               Plaintiff,

vs.                                  Case No. 10-2500-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

               Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 13, 2010, administrative law judge (ALJ) Patricia E. Hartman issued her decision (R. at 11-16). Plaintiff alleges that she has been disabled since March 10, 2008 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2012 (R. at 13). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 13). At step two, the ALJ found that plaintiff had the following severe

impairments: obesity, bilateral carpal tunnel syndrome status post multiple surgeries, and degenerative disc disease with radiculopathy of the left leg (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is able to perform past relevant work (R. at 16). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 16).

**III. Did the ALJ err in her evaluation of the medical opinion evidence?**

The two medical source opinions in the record regarding plaintiff's RFC are a physical RFC assessment from a non-examining source (R. at 247-254, 272), and a physical RFC assessment from Dr. Bennington, a treating chiropractor (R. at 301-305). The key issue before the court is the relative weight given by the ALJ to these two sources.

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.

5

Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources."  SSR 06-03p, 2006 WL 2329939 at *1.  "Acceptable medical sources" include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502.  Evidence is needed from an "acceptable medical source" indicating that a claimant has a medically determinable impairment.  20 C.F.R. 404.1513(a).

A chiropractor is not an "acceptable medical source" under the regulations.  20 C.F.R. § 404.1513(a).  However, evidence from "other medical sources," including a chiropractor, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion

6

evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. SSR 06-03p, 2006 WL 2329939 at **2,3,5.

The ALJ found that plaintiff is limited to light work, except that she must be able to sit or stand at will, cannot climb ladders, ropes, or scaffolds, and cannot kneel, crouch, or crawl. Additionally, the claimant is limited to only frequent handling or fingering with either hand, no work with dangerous, unprotected machinery, at unprotected heights, or with vibrating tools, and is limited to work with a Specific Vocational Preparation (SVP) rating of 4 or less (R. at 14). The court will set out the ALJ's discussion of the evidence in support of her RFC findings:

> The following supports the above conclusion regarding the claimant's residual functional capacity:
>
> • **The opinion of the treating source[s]**. Dr. Terrence Pratt, M.D., the claimant's treating orthopedist, assessed her in a December 18, 2007 report as having a 5% whole body disability. Dr. Pratt was treating the claimant for cervico-thoracic syndrome. His Medical Source Statement of that date does not provide any opinion as to specific exertional or non-exertional limitations (Exhibit 4F at 3-4).
>
> Sean Bennington, D.C., the claimant's treating chiropractor, provided treatment records and a Physical Residual Functional Capacity Questionnaire dated February 4, 2010 (Exhibits 10F, 11F). Dr. Bennington is not an

7

> acceptable medical source. However, the
> factors used to evaluate opinions from
> "acceptable medical sources" may be applied
> to opinion evidence from other sources, since
> they encompass general principles applicable
> to all evidence (SSR 06-03p). Dr.
> Bennington's opinion limits the claimant to
> less than sedentary work (Exhibit 11F at
> 3-7).
>
> • **The opinion of the examining, nontreating
> source**. Dr. Gregory Walker, a neurosurgeon,
> examined the claimant twice in April 2005 and
> December 2007 (Exhibit 1F at 4-6,9-12). In
> 2007, Dr Walker assessed the claimant as
> having a 15% whole body disability associated
> with cervical spine degenerative disc
> disease. However, in his later report, Dr.
> Walker does not provide any opinion as to
> specific limitations regarding her residual
> functional capacity (Exhibit 1F at 4-6).
>
> • **The opinion of the nonexamining,
> nontreating source**. Dr. Artur R. Oczko
> prepared a Physical Residual Functional
> Capacity Assessment for the State agency
> dated April 22, 2008 based on the records
> available at that time (Exhibit 3F). Dr.
> Oczko assessed the claimant as being capable
> of light work with significant manipulative
> limitations (as reflected in the residual
> functional capacity stated at Finding #5,
> above).
>
> • **The medical signs and findings**. Magnetic
> resonance imaging (MRI) scanning of the
> claimant's lumbar spine showed degenerative
> changes at L4-L5 and L5-S1 including disc
> degeneration and severe facet arthropathy
> (Exhibit 12F at 3). Additional x-ray images
> of the lumbar spine taken on January 26, 2010
> confirmed this diagnosis (Exhibit 9F at 5).

(R. at 14-15, emphasis in original).

> **The undersigned gives significant weight to
> the opinion of Dr. Oczko, as it is consistent**

> **with the medical record**. As noted above,
> neither Dr. Pratt nor Dr. Walker provided an
> opinion regarding the claimant's residual
> functional capacity. **The undersigned gives
> little weight to the opinion of Dr.
> Bennington, the claimant's treating
> chiropractor, because it is not consistent
> with the medical evidence and, as noted, Dr.
> Bennington is not an acceptable medical
> source**.
>
> The medical evidence indicates that the
> claimant is using minimal pain medications.
> Additionally, the medical evidence does not
> support the severity of impairment alleged.
>
> **In sum, the above residual functional
> capacity assessment is supported by the
> medical record and the opinion of Dr. Oczko.**

(R. at 15, emphasis added).

As a preliminary matter, the court would note that the ALJ erroneously stated that the state agency physical RFC assessment was prepared by Dr. Oczko. In fact, this assessment was prepared by Artur R. Oczko, an "SDM" (R. at 254). "SDM" stands for a "Single Decision Maker." An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010). However, the court would note that Dr. Parsons reviewed the evidence and affirmed this assessment on June 23, 2008 (R. at 272).

The ALJ indicated that she gave "significant weight" to the state agency assessment affirmed by Dr. Parsons, while giving

9

"little weight" to the assessment by Dr. Bennington, a treating chiropractor. The ALJ concluded that her RFC findings were supported by the medical record cited above, and by the opinions expressed in the assessment affirmed by Dr. Parsons (R. at 15).

However, the ALJ's RFC findings include numerous limitations not set forth in the assessment affirmed by Dr. Parsons, including the following:

> 1. She must be able to sit or stand at will.
>
> 2. She cannot climb ladders, ropes or scaffolds, and she cannot kneel, crouch or crawl.
>
> 3. No work with dangerous, unprotected machinery, at unprotected heights, or with vibrating tools, and is limited to work with a Specific Vocational Preparation (SVP) rating of 4 or less.

(R. at 14, R. at 247-254). On the other hand, the ALJ, without explanation, left out a limitation set forth in the state agency assessment:

> 1. Occasional overhead reaching with right shoulder.

(R. at 14, R. at 250). In the case of <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ purported to base his RFC findings on the state agency RFC assessment, but failed to explain why he made findings inconsistent with the assessment, or why he rejected portions of the assessment. For this reason, the court held that the ALJ failed to comply with SSR 96-8p.

Furthermore, the ALJ made some RFC findings that were consistent with the opinions set forth by Dr. Bennington, and which were not included in the state agency assessment:

> 1. She must be able to sit or stand at will.
>
> 2. She cannot climb ladders and cannot crouch/squat.

(R. at 14, 303, 304). The ALJ, who gave "significant weight" to the state agency assessment, failed to explain why he adopted some, but not all, of the limitations set forth in the state agency assessment, while including other limitations not contained in that assessment. Furthermore, the ALJ, who gave "little weight" to the opinions of Dr. Bennington, failed to explain why he made RFC findings that included some, but not all, of the limitations that Dr. Bennington set forth in his assessment.

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. The ALJ must also explain how any material inconsistencies or ambiguities in the evidence in the record were considered and resolved. SSR 96-8p, 1996 WL 374184 at *7. Although the ALJ asserts that her RFC findings are supported by the medical record and the state agency assessment, it is not at all clear to the court how the RFC was derived. The ALJ offered no explanation for including some limitations from the state agency assessment, while also

including other limitations not in this assessment, and excluding one limitation contained in this assessment.  Furthermore, the ALJ's RFC findings excludes many of the limitations in Dr. Bennington's assessment, but without explanation, includes some limitations contained only in Dr. Bennington's assessment.  The ALJ's RFC findings are unreviewable because the court is unable to discern how the ALJ reached her decision.  The ALJ offered no reasonable explanation for the relative weight accorded to these two assessments.

The ALJ also stated, in conclusory fashion, that the opinions in the state agency assessment were consistent with the medical evidence, while the opinions of Dr. Bennington were not consistent with the medical evidence.  However, the ALJ erred by failing to specifically highlight those portions of the record with which Dr. Bennington's opinions were allegedly inconsistent.  The ALJ also failed to specifically highlight those portions of the record which were allegedly consistent with opinions set forth in the state agency assessment.  Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004).  It is not at all clear why the ALJ concluded that the opinions in the state agency assessment were consistent with the medical record while the opinions of Dr. Bennington were not.  Other than the fact that the two assessments were inconsistent with each other, the ALJ failed to

12

specifically highlight any portion of the remainder of the medical record that supported the state agency assessment, or that did not the assessment of Dr. Bennington. Furthermore, the court would note that there is no other medical opinion evidence in the record regarding plaintiff's RFC. The ALJ specifically noted that the medical records of Dr. Pratt and Dr. Walker, the only other two medical sources specifically identified by the ALJ in her decision, did not provide any opinions as to plaintiff's RFC or any specific exertional or nonexertional impairments or limitations (R. at 15). The court finds that the ALJ has failed to provide substantial evidence to support its determination that "substantial weight" should be accorded to the state agency assessment, and its determination to give "little weight" to the opinion of Dr. Bennington.

Although SSR 06-03p sets forth a number of factors that the ALJ should consider when determining what weight should be accorded to an "other" medical source, 2006 WL 2329939 at *4, the only factor the ALJ mentioned was whether Dr. Bennington's opinions were consistent with other evidence. As the court noted above, that analysis was flawed. When this case is remanded, the ALJ should consider all the factors set forth in SSR 06-03p when determining what weight should be accorded to his opinions.

Furthermore, the court would note that the state agency RFC assessment consists primarily of checking boxes on a form, with

little narrative, and without giving any specific reasons for the functional limitations assessed. In addition, this assessment was written on April 22, 2008, and affirmed by Dr. Parsons on June 23, 2008 (R. at 272). Thus, Dr. Parsons did not have before him any of the subsequent medical evidence in the record, including the opinions of Dr. Bennington, plaintiff's treating chiropractor. See Daniell v. Astrue, 384 Fed. Appx. 798, 803 (10th Cir. June 29, 2010).

RFC assessments prepared by non-examining sources, consisting primarily of check-the-box evaluation forms, do not constitute substantial evidence when they are not accompanied by thorough written reports or persuasive testimony. Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007); see Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003). When this case is remanded, the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Therefore, on remand, the ALJ should consider recontacting plaintiff's treatment providers in order to determine if additional information or clarification is available (20 C.F.R. § 404.1512(e)(1)), and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional limitations. Fleetwood, 211 Fed. Appx. at 741; Lamb, 85 Fed. Appx. at 57. The ALJ could also consider having a medical expert testify at the hearing regarding

plaintiff's RFC after reviewing the record.[1]

Plaintiff also asserts error by the ALJ because of her alleged failure to consider the medical records of Dr. Davis. However, the ALJ did specifically reference some of the medical records of Dr. Davis (R. at 15). The court would also note that other records from Dr. Davis were not provided to the Commissioner until after the ALJ decision (R. at 4, 309-317).[2] The court finds no error by the ALJ in her consideration of the records of Dr. Davis.

**IV. Did the ALJ err in her evaluation of plaintiff's credibility?**

---

[1] The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. Richardson v. Perales, 402 U.S. 389, 408 (1971). Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision. Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).

[2] The records submitted after the ALJ decision were added to the record by the Appeals Council (R. at 5), and were considered by the Appeals Council, which found that this information did not provide a basis for changing the ALJ's decision (R. at 2). When the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion. We take the Appeals Council at its word when it declares that it has considered a matter. Martinez v. Astrue, 389 Fed. Appx. 866, 868-869 (10th Cir. Aug. 3, 2010).

Plaintiff argues that the ALJ erred in her analysis of plaintiff's credibility. The court will not reach this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical evidence, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of June 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge